MARK ANCHOR ALBERT & ASSOCIATES
MARK ANCHOR ALBERT, State Bar No. 137027
  *albert@lalitigators.com*
JASON T. RIDDICK, State Bar No. 235980
  *riddick@lalitigators.com*
800 W. 6th Street, Suite 1220
Los Angeles, California 90017
Telephone: (213) 699-1355
Facsimile: (213) 699-1354

Attorneys for Plaintiff
JEFFREY S. KOENIG

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| JEFFREY S. KOENIG, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>GAVIN CHRISTOPHER NEWSOM, in his official capacity as Governor of the State of California; and ALEX PADILLA, in his official capacity as the Secretary of State of the State of California,<br><br>    Defendants.<br><br>AND RELATED ACTIONS. | Case No.  2:19-cv-01507-MCE-DB<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: September 19, 2019<br>Time: 10:00 a.m.<br>Place: Courtroom 7, 14th floor<br>Hon. Morrison C. England, Jr., presiding |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. The State Defendants Have Failed To Establish With Admissible Evidence A "Compelling State Interest" That Justifies SB 27..................................................2

    B. The Supposed "Compelling State Interest" In Obtaining President Trump's Tax Returns Is Wholly Pretextual .........................................................................5

    C. The Presidential Electors Clause And Qualifications Clause Provide Less Leeway For States To Regulate Presidential Primary Ballot Access Than The Elections Clause Provides In The Case Of Congressional Elections ..........................7

III. CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Am. Party of Tex. v. White*, 415 U.S. 767 (1974) ...................................................................................9

*Anderson v. Celebrezze*, 460 U.S. 780 (1983). ..................................................................................5, 7

*Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ...............................................................7

*Bergland v. Harris*, 767 F.2d 1551 (11th Cir. 1985) .........................................................................4, 7

*Bush v. Gore*, 531 U.S. 98 (2000). .........................................................................................................8

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) ................................................................8

*Charter Communs., Inc. v. Cty. of Santa Cruz*, 304 F.3d 927 (9th Cir. 2002) .....................................4

*Clingman v. Beaver*, 544 U.S. 581 (2005) ............................................................................................9

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) .........................................7

*Crowell v. Benson*, 285 U.S. 22 (1932) ................................................................................................3

*Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758 (9th Cir. 1982) ..............................5

*Gomillion v. Lightfoot*, 364 U.S. 339 (1960) ........................................................................................6

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ..........................................................................................3

*Gray v. Sanders*, 372 U.S. 368 (1963) ...............................................................................................10

*Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936) .................................................................................6

*Kusper v. Pontikes*, 414 U.S. 51 (1973) ................................................................................................8

*Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978) .....................................................3

*McCrary v. Poythress*, 638 F.2d 1308 (5th Cir. 1981) .........................................................................7

*McPherson v. Blacker*, 146 U.S. 1 (1892) ............................................................................................8

*North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016) ...................6

*Public Integrity Alliance, Inc. v. City of Tuscon*, 836 F.3d 109 (9th Cir. 2016) ..................................9

*Reynolds v. Sims*, 377 U.S. 533 (1964). .............................................................................................10

*Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004) ..........................................................7

*Rucho v. Common Cause*, __ U.S. __, 139 S. Ct. 2484 (2019) ............................................................7

*RUI One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2004),..................................................5

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986)...................................................9

*Terry v. Adams*, 345 U.S. 461 (1953)..................................................................................................9

*Terry v. Adams*, 345 U.S. 461 (1953)................................................................................................10

*United States v. Classic*, 313 U.S. 299 (1941). ..............................................................................9, 10

*United States v. O'Brien*, 391 U.S. 367 (1968) ...............................................................................5, 6

*United States v. Windsor*, 570 U.S. 744 (2013) ...................................................................................6

*Williams v. Rhodes*, 393 U.S. 23 (1968). ............................................................................................8

*Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.)*, 482 F.3d 1118 (9th Cir. 2007) ........................2

*Ziskis v. Symington*, 47 F.3d 1004 (9th Cir. 1995)..............................................................................9


**FEDERAL STATUTES**

28 U.S.C. § 1983 ...................................................................................................................................1


**STATE STATUTES**

Cal. Elec. Code § 6470..........................................................................................................................9

SB 149…………………………………………………………………………………..............5

SB 27…………….........................................................................................................................*passim*


**OTHER AUTHORITIES**

Congressional Elections Clause (U.S. Const. art. I, § 4, cl. 1).............................................................2

Electors Clause (U.S. Const., art. II, § 1, para. 1-2)………………………………………………..2

Presidential Qualifications Clause (U.S. Const., art. II, § 1, cl. 5).................................................1, 2

## I. INTRODUCTION

The State Defendants' Omnibus Opposition to the related Plaintiffs' motions for preliminary injunction – while repeating time and again the false mantra that the Presidential Tax Transparency and Accountability Act ("SB 27") is "even-handed" and "neutral" – fails to address the primacy of the presidential Qualifications Clause (U.S. Const., art. II, § 1, cl. 5) over state electoral regulatory power under the presidential Electors Clause, in relation to the voting and associational rights of California Republican primary voters under the First and Fourteenth Amendments to the Constitution.[1]  Instead, the State Defendants wrongly assume that Congressional Elections Clause jurisprudence controls this constitutional dispute.

As shown in the opening brief and below, the superficial appearance of SB 27's uniform application to primary candidates from all eligible political parties is a ruse.  There is no "compelling" state interest in obtaining President Trump's tax returns.  The supposedly "urgent" need to provide this "critical" information to primary voters is wholly pretextual.  The State Defendants provide no evidentiary support – by declaration, affidavit, or otherwise – to back up their bald claims of "compelling" state interests.  Little or no deference should be accorded to the California Legislature's "findings" in that regard, since federal courts routinely discount and disregard legislative findings that purport to justify the violation of fundamental First Amendment rights.  By imposing an unconstitutional condition impacting the primary ballot access of the incumbent President of the United States, SB 27's true intent and purpose is to suppress the vote of Trump supporters in California, down ballot, and across the board.

Remarkably, the Omnibus Opposition does not cite, much less thoughtfully analyze, a key

---

[1] There is a substantial overlap in the related Plaintiffs' core constitutional arguments regarding SB 27's unconstitutional imposition of a fourth qualification under the Qualifications Clause of the U.S. Constitution, and the undue burden it imposes on the voting and associational rights of Republican primary voters under the First and Fourteenth Amendments to the U.S. Constitution, and 28 U.S.C. § 1983.  To avoid unnecessary duplication, Plaintiff Jeffrey S. Koenig hereby joins in and incorporates herein by reference those arguments asserted by the other Plaintiffs in the related and coordinated *Griffin* Action (No. 2:19-cv-01477-MCE-DB), *Trump* Action (No. 2:19-cv-01501-MCE-DB) and *Melendez* Action (No. 2:19-cv-01506-MCE-DB).  Therefore, this reply brief focuses on issues not fully developed or addressed in the other parties' briefs.

1  and dispositive constitutional provision – the Electors Clause (U.S. Const., art. II, § 1, para. 1-2).
2  Instead, it blithely assumes that the "time, place and manner" precedents under the Congressional
3  Elections Clause (U.S. Const. art. I, § 4, cl. 1) applies with equal force to presidential primary
4  elections.  But presidential elections are different.  They are special and unique because they are the
5  only national elections.

6  As a structural matter, the Presidential Qualifications Clause (U.S. Const., art. II, § 1, cl. 5)
7  limits the regulatory discretion of the states under the Electors Clause to impose new, state-specific
8  qualifications on presidential candidates.  While individual states may choose to appoint
9  presidential electors without holding primary elections, once a state chooses to employ primary
10 elections as the manner of choosing its presidential electors, as California has done here, the
11 primary voters' First and Fourteenth Amendment voting and associational rights come fully into
12 play.

13 The State Defendants have failed to support their Opposition with admissible evidence, their
14 "compelling state interest" justification is conclusory and without evidentiary support, and little or
15 no deference should be accorded to the "legislative findings" in that regard.  SB 27's wholly
16 pretextual nature is evident because its inevitable purpose and effect (unless enjoined) will be to
17 effectively disenfranchise California's nearly 5 million registered Republican voters and every other
18 citizen who wishes to cast his or her vote for President Trump in the Republican primary election.

19 **II.   ARGUMENT**
20 **A.   The State Defendants Have Failed To Establish With Admissible Evidence A**
21 **"Compelling State Interest" That Justifies SB 27**

22 The State Defendants submit no admissible evidence in support of their Omnibus
23 Opposition. While voluble and prolix, the Opposition is devoid of factual and evidentiary support,
24 instead relying entirely on the California Legislature's "findings" to buttress its naked claim of a
25 "compelling state need" for the President's tax returns.  But "arguments and statements of counsel
26 are not evidence." *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.)*, 482 F.3d 1118, 1122 n.1
27 (9th Cir. 2007).  And the Court is not obligated to accept at face value the "legislative findings" that
28 the State Defendants tout as justifications for SB 27's punitive impact on Republican primary

2
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1 voters.  The Court is left to speculate about what evidence, if any, supports the "legislative
2 findings" that supposedly justify the imposition of a new tax return production requirement for
3 presidential candidates for the first time in our Country's long history.  There is no evidence here
4 that the legislative declarations as they pertain to SB 27 are rooted in actual facts.

5       Ample Supreme Court jurisprudence establishes that a stated legislative purpose is far from
6 unassailable, especially in the First Amendment context.  Indeed, "[d]eference to a legislative
7 finding cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark*
8 *Communications, Inc. v. Virginia*, 435 U.S. 829, 843 (1978).[2]  On the contrary, District Courts
9 "have stressed in First Amendment cases that the deference afforded to legislative findings does
10 'not foreclose our independent judgment of the facts bearing on an issue of constitutional law.'"
11 Thus, courts are obligated to "assure that, in formulating its judgments, Congress has drawn
12 reasonable inferences, <u>based on substantial evidence</u>." *Duncan v. Becerra*, 366 F. Supp. 3d 1131,
13 1168 (S.D. Cal. 2019) (emphasis added).  *Accord, Haddad v. Wall*, 107 F. Supp. 2d 1230, 1237
14 (C.D. Cal. 2000) (rejecting reliance on legislative findings where the proponent "fails to cite any
15 evidence supporting these supposed legislative findings").

16       When a constitutional right, such as the right to vote for a presidential primary candidate, is
17 at stake, the usual judicial deference to legislative findings gives way to an exercise of independent
18 judgment of the facts to ascertain whether the legislative body "has drawn reasonable inferences
19 <u>based on substantial evidence</u>." *Professional Engineers v. Department of Transportation,* 15 Cal.
20 4th 543, 569 (1997), citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 666 (1994)
21 (lead opn. of Kennedy, J.) (in First Amendment cases, federal court must "assure that, in
22 formulating its judgments, [the Legislature] has drawn reasonable inferences <u>based on substantial</u>
23 <u>evidence</u>") (emphasis added).

---

[2] *See also Gonzales v. Carhart*, 550 U.S. 124, 165 (2007) ("[A]lthough we review congressional factfinding under a deferential standard, we do not in the circumstances here place dispositive weight on Congress' findings. The Court retains an independent constitutional duty to review factual findings where constitutional rights are at stake."); *Crowell v. Benson*, 285 U.S. 22, 60 (1932) ("In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function.").

1    To the extent the Court is inclined to grant any deference at all to the conclusory "legislative
2 findings" undergirding SB 27, the State Defendants' claim of a "compelling state interest" in
3 requiring the production of presidential candidates' tax returns is readily refuted by the judicially-
4 noticeable fact that the federal income tax was not officially established until 1913, with the 16th
5 Amendment to the Constitution, giving Congress legal authority to tax income.  So for the first 137
6 years of this Nation's history, the federal income tax did not even exist, and in the 106 years since
7 its establishment, no law has ever required presidential candidates to disclose their tax returns as a
8 condition for access to a presidential primary ballot.   Somehow, the Nation survived thus far
9 without satisfying this recently-discovered "compelling state interest."   That is because no such
10 "compelling state interest" actually exists.
11    When, as here, a state fails to provide *any* admissible evidence (much less *substantial*
12 evidence) to support "legislative findings" used to justify a restrictive ballot access measure, the
13 Court should give little or no credence to those "findings."  As stated in *Bergland v. Harris*, 767
14 F.2d 1551, 1554 (11th Cir. 1985):

> 15    Under *Anderson v. Celebrezze*, a court ruling on a challenge to ballot access
> 16    restrictions must not only determine the legitimacy and strength of the interests
> 17    claimed by the State to justify its rules, but must also "consider the extent to which
> 18    those interests make it necessary to burden the plaintiff's rights." 460 U.S. at 789,
> 19    103 S. Ct. at 1570.  The affidavits filed by the State in this case are simply
> 20    inadequate to allow a court to conduct such a weighing of interests. <u>The State must
> 21    introduce evidence to justify both the interests the State asserts and the burdens the
> 22    State imposes on those seeking ballot access</u>." (Emphasis added.)

23 Accord, *Charter Communs., Inc. v. Cty. of Santa Cruz*, 304 F.3d 927, 930 n.3 (9th Cir. 2002) ("the
24 district court's obligation was to review the legislative findings of the County in its Denial
25 resolution and <u>to examine whether substantial evidence supported any one of the reasons offered by
26 the County</u>") (emphasis added).  Because the State Defendants have proffered zero evidence, much
27 less substantial evidence, to support the "legislative findings" of a "compelling state interest" in
28 obtaining the President's tax returns, Plaintiffs' preliminary injunction motions should be granted.

4
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### B. The Supposed "Compelling State Interest" In Obtaining President Trump's Tax Returns Is Wholly Pretextual

A central thrust of the State Defendants' Omnibus Opposition is that SB 27's tax return production requirement constitutes a "generally-applicable and evenhanded restriction[] that protect[s] the integrity and reliability of the electoral process itself" under *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983). (*See* Opposition at 2:1, 7:13, 13:2-3; 16:24-25 & 17:7-8). But SB 27's legislative history belies this claim. *See generally* http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200SB27. Like its predecessor, SB 149, that former Governor Brown wisely vetoed, SB 27 specifically targets President Trump and penalizes the nearly 5 million Republican voters as a sanction for noncompliance with its diktat. The "voter information" excuse as a justification for SB 27 is pretextual. The fact that President Trump is not inclined to voluntarily waive his statutory privilege to maintain the confidentiality of his federal tax returns itself constitutes vital voter information. And the voters have a simple and effective remedy if they object to the President's decision: they can decline to vote for him and/or vote for another presidential candidate.

Since the President has made abundantly clear that he will not voluntarily relinquish his statutory tax return privileges, the obvious purpose and intent of SB 27 is not to obtain the President's tax returns by this ballot access condition, but rather, to disenfranchise and disincetivize the nearly 5 million Republican voters in this State, and other voters who may wish to register and vote as Republicans in the upcoming presidential primary election. It is true that, under *United States v. O'Brien*, 391 U.S. 367, 383 (1968), ordinarily courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *See also  RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1146 n.7 (9th Cir. 2004), wherein our court of appeals concluded facts "introduced solely to establish a supposed nefarious motive on behalf of the City Council . . . are wholly irrelevant . . . as our analysis of the constitutionality of an ordinance must proceed from the text of the ordinance, not the alleged motives behind it" (citing *Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758, 761 (9th Cir. 1982) (quoting *O'Brien,* 391 U.S. at 383)).

While these decisions indicate that allegations of legislative motive behind SB 27's passage would not suffice by themselves to establish unconstitutionality, Plaintiff's claims of pretext and discriminatory purpose and motive do not rest solely on allegations that the supermajority Democrat-controlled California Legislature and its Democratic Governor harbor malice towards President Trump and his supporters. Indeed, *O'Brien* expressly acknowledged that "the inevitable effect of a statute on its face may render it unconstitutional." *O'Brien*, 391 U.S. at 384-85; *see also Gomillion v. Lightfoot*, 364 U.S. 339, 341-42 (1960); and *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250-51 (1936). Thus, in *Gomillion*, a complaint survived dismissal by alleging that the "essential inevitable effect" of redefined municipal boundaries was to deprive the complainants of voting rights based on their race. 364 U.S. at 341-42 (state laws apparently lawful on their face "may become unlawful when done to accomplish an unlawful end [citation omitted], and a [State's] constitutional power cannot be used by way of condition to attain an unconstitutional result."). And, in *Grosjean*, "a deliberate and calculated device in the guise of a tax to limit the circulation of information to which the public is entitled" was held unconstitutional. 297 U.S. at 250-51. Unlike in *O'Brien*, Plaintiff's Complaint here does not ask this Court "to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of [Legislators] said about it." *See O'Brien*, 391 U.S. at 384. Instead, Plaintiff contends the SB 27 is "unconstitutional in its purpose and effect."

This case is also analogous to cases arising under the Equal Protection Clause of the Fourteenth Amendment, where a legislature's improper motive itself gives sufficient cause for courts to find a law unconstitutional. Here, as in those Equal Protection cases, this Court is not only entitled to conduct, but should conduct, a pretext analysis to ascertain the legislature's true motive. *See, e.g. United States v. Windsor*, 570 U.S. 744, 770 (2013) (striking down an act of Congress because it was "motivated by an improper animus"); *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 220 (4th Cir. 2016) (a law is invalid under the Equal Protection Clause if a "discriminatory purpose was . . . a motivating factor" or if "the legislature enact[ed] a law 'because of,' and not 'in spite of,' its discriminatory effect." (internal citations omitted)). Piercing behind the supposedly neutral and even-handed veneer of this partisan ballot access law to assess its pretextual

and discriminatory purpose, nature, and effect is needed in order to avoid the "circumventi[on] [of] a federally protected right." *See Gomillion*, 364 U.S. at 347; *see also Cornelius v. NAACP Legal Def. & Educ. Fund, In*c., 473 U.S. 788, 812-13  (1985) (noting that a government-imposed restriction might violate the First Amendment if it was "impermissibly motivated by a desire to suppress a particular point of view."); *Ridley v. Mass. Bay Transp. Auth*., 390 F.3d 65, 86 (1st Cir. 2004) (in a First Amendment case, "[t]he recitation of viewpoint-neutral grounds may be a mere pretext for an invidious motive").

The Democratic-controlled California Legislature should not be permitted to dictate to Republican voters what information they must consider as a condition to voting for their political party's standard-bearer, based on patently pretextual justifications.

### C. The Presidential Electors Clause And Qualifications Clause Provide Less Leeway For States To Regulate Presidential Primary Ballot Access Than The Elections Clause Provides In The Case Of Congressional Elections

Federal courts value a citizen's rights to vote and associate with other likeminded citizens especially highly at the presidential nominating level.  A state's interest in regulating a presidential election is less important than its interest in regulating other elections because the outcome of a presidential election "will be largely determined by voters beyond the State's boundaries" and "the pervasive national interest in the selection of candidates for national office. . . is greater than any interest of an individual State." *Anderson*, *supra*, 460 U.S. at 795.  Consequently, a ballot access restriction for presidential elections "requires a different balance" than a restriction for state elections.  *See Bergland*, *supra*, 767 F.2d at 1554; *see also McCrary v. Poythress*, 638 F.2d 1308, 1314 n.5 (5th Cir. 1981) (holding that the constitutionality of Georgia's ballot access law may be different as applied to a presidential election). For this reason, the Elections Clause cases on which the State Defendants primarily rely are distinguishable, because states have more leeway in regulating congressional elections than they do in regulating presidential elections.[3]

---

[3] *E.g., Ariz. v. Inter Tribal Council of Ariz., Inc*., 570 U.S. 1, 8 (2013); *Rucho v. Common Cause*, __ U.S. __, 139 S. Ct. 2484, 2495 (2019).  (*See* Opp. at 11:1-14.)

7
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

It is true that Article II, Section 1, Clause 2 of the United States Constitution vests plenary power in state legislatures to determine and implement the manner by which a state chooses its Electoral College Electors. *McPherson v. Blacker*, 146 U.S. 1, 35 (1892). Accordingly, "[t]he individual citizen has no federal constitutional right to vote" for Presidential Electors, and the state legislature "may, if it so chooses, select the Electors itself." *Bush v. Gore*, 531 U.S. 98, 104 (2000). But the legislative elector power cannot be used to place new limits on who can be President. The Electors Clause does not permit California (or any other state) to require its Electors to withhold their presidential votes from candidates "who have failed to publicly disclose their tax returns by XX date" or to only allow electors "who are pledged to support presidential candidates who have publicly disclosed their tax returns by XX date." That premise is easily refuted by replacing the words "publicly disclose their tax returns" with other impermissible qualifications and conditions (such as "publicly disclose the results of their genetic tests"). States have flexibility in how electors are selected but cannot use that flexibility to impose new qualifications on who can be included on a political party's primary election ballot.

The Supreme Court has made clear, despite the plenary power in the state legislature to appoint presidential electors, that Article II, Section 1 does not "give[] the States power to impose burdens on the right to vote, where such burdens are expressly prohibited in other constitutional provisions." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). When, as California has done here, "the state legislature vests the right to vote for President in the people, the right to vote . . is fundamental[.]" *Bush v. Gore*, 531 U.S. at 104. Every state now mandates that political parties select their candidates for national or statewide office by means of primary elections. *See* Galderisi & Ezra, Congressional Primaries in Historical and Theoretical Context, in Congressional Primaries and the Politics of Representation 11, 17, and n. 34 (P. Galderisi, M. Ezra, & M. Lyons eds. 2001). Primaries constitute both a "crucial juncture" in the electoral process, *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216 (1986), and a vital forum for expressive association among voters and political parties, *see Kusper v. Pontikes*, 414 U.S. 51, 58 (1973) ("[A] basic function of a political party is to select the candidates for public office to be offered to the voters at general elections[, and a] prime objective

of most voters in associating themselves with a particular party must surely be to gain a voice in that selection process"). Primary voters like Plaintiff Keonig therefore are entitled to special federal court protection of their voting and associational rights under the U.S. Constitution in the context of presidential elections.

Thus, despite a state legislature's plenary power to appoint presidential Electors under the Electors Clause, once the state grants its citizens the right to vote in a presidential primary, it cannot unduly restrict a political party's and its primary voters' "associational opportunities" in their political primary, which is the "crucial juncture at which the appeal to common principles may be translated into concerted action, and lead to political power in the community." *Tashjian*, 479 U.S. at 216.

The State Defendants argue that *Anderson*'s statement that a state's interests are less powerful in the context of a presidential election than in a state or congressional election is inapplicable in a primary election context, because a primary election involved only state voters. Opp. at 21:5-28 & 221-9 (citing *Public Integrity Alliance, Inc. v. City of Tuscon*, 836 F.3d 109 (9th Cir. 2016) (en banc)). That argument fails.

First, the cases cited by *Public Integrity Alliance* as illustrating the "jurisprudence permitting voting restrictions in primary elections that would be unconstitutional in the general election" (*id.* at 1027) – *Clingman v. Beaver*, 544 U.S. 581 (2005); *Am. Party of Tex. v. White*, 415 U.S. 767, 786, (1974); and *Ziskis v. Symington*, 47 F.3d 1004, 1004-05 (9th Cir. 1995) – did not involve national presidential elections. As noted previously, presidential elections implicate unique national interests and the state interests are less compelling than in the case of state or congressional elections.

Second, when, as here, a primary election is an integral and essential part of the general election (*see, e.g.,* Cal. Elec. Code § 6470 [Republican Presidential Primary]), a state's interference with the right of primary voters to choose their political party's standard bearer is a <u>fundamental right</u> "secured by the Constitution." *United States v. Classic*, 313 U.S. 299, 314 (1941). Accordingly, contrary to Defendants' argument, the right to be free from unreasonable state interference in a primary voter's presidential election choice "is protected just as is the right to vote

1  at the [general] election, where the primary is by law made an integral part of the election
2  machinery." *Id.* at 318, 319; *Terry v. Adams*, 345 U.S. 461 (1953).  When, as here, the state makes
3  the primary an "integral part of the procedure of choice," every eligible citizen's right to vote is
4  entitled to receive the same constitutional protection as in the general election.  *See Classic*, 313
5  U.S. at 318; *see also, e.g., Gray v. Sanders*, 372 U.S. 368 (1963) (invalidating primary system that
6  diluted individual's vote in a primary election).

   Third, the right to vote, whether in the primary or the general election, is the right to vote
   "for the candidate of one's choice." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

   Finally, in assessing burdens on Plaintiff's voting and associational rights with respect to the Republican presidential primary election – burdens that are not limited to absolute denial of the right – this Court should focus on the realities of the situation, not on empty formalism. *See Classic*, 313 U.S. at 313 (identifying "the practical operation of the primary law"); *see also Terry v. Adams*, 345 U.S. 461, 469-470 (1953) (noting that the Jaybird primary is "the only effective part" of the election process and examining "the effect of the whole procedure" in determining whether the scheme violated the Fifteenth Amendment).  Given the demonstrable fact that President Trump is fighting efforts by Democratic officials in multiple state and federal courts nationwide, and in Congress, to prevent the forced disclosure of his tax returns, it is highly doubtful that SB 27's true intent and purpose, and likely outcome, is to obtain the President's tax returns on an "urgent" basis. Instead, the "practical operation of the primary law" here, if it is not enjoined, will be to deprive nearly 5 million Republican primary voters of their right to cast a vote for their standard-bearer, the incumbent President of the United States.  That is why immediate injunctive relief is warranted.

**III.   CONCLUSION**

For the foregoing reasons, the Court should preliminarily enjoin SB 27's implementation.

DATED: September 12, 2019                MARK ANCHOR ALBERT & ASSOCIATES

By: _____
Mark Anchor Albert
Attorneys for Plaintiff JEFFREY S. KOENIG